UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 1:17mj03648 - Garber

UNITED STATES OF AMERICA

vs.

ANTHONY GIGNAC,

    Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes \_\_x\_\_ No

    Respectfully submitted,

    BENJAMIN G. GREENBERG
    ACTING UNITED STATES ATTORNEY

BY: _____
    TRINITY JORDAN
    ASSISTANT UNITED STATES ATTORNEY
    Court ID No. A5502340
    99 N. E. 4th Street
    Miami, Florida 33132-2111
    TEL (305) 961-9202
    FAX (305) 530-7976

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>ANTHONY GIGNAC,<br><br>_____<br>*Defendant(s)* | )<br>)<br>)   Case No.  1:17mj03648-Garber<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  March 24, 2017 - October 25, 2017  in the county of  Miami-Dade  in the
Southern  District of  Florida  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 915. | Impersonating a diplomat or foreign government official, in violation of Title 18, United States Code, Section 915. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

M. AIZAZ TAREEN, SPECIAL AGENT DSS
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  11/17/2017

_____
*Judge's signature*

City and state:  Miami, Florida    BARRY L. GARBER, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT

I, M. Aizaz Tareen, being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent for the United States Department of State, Diplomatic Security Service (DSS), currently assigned to the Miami Field Office in Miami, Florida. I have been so employed since August 2016. I have received training in criminal investigations, including but not limited to passport and visa fraud investigations and the execution of search warrants, at the Federal Law Enforcement Training Center and the Diplomatic Security Training Center. I also received eleven weeks of additional advanced federal law enforcement training at the Diplomatic Security Training Center. Prior to becoming a Special Agent, I attended law school and was employed as an Immigration Services Officer at U.S. Citizenship and Immigration Services, where I focused on cases involving fraud and national security issues.

2. The information in this Affidavit is based upon my own knowledge, records furnished to or obtained by me in my official capacity, and information provided by law-enforcement officials, civilian witnesses, and other official sources. The information in this Affidavit is submitted for the sole purpose of establishing probable cause that, from or around March 24, 2017, through on or about October 25, 2017, Anthony GIGNAC impersonated a diplomat or foreign government official, in violation of Title 18, United States Code, Section 915. Because this Affidavit is being submitted for the limited purpose of establishing probable cause, the facts set forth herein do not constitute all the facts known to law enforcement about this investigation.

## STATUTORY AUTHORITY

3. This investigation concerns alleged violations of Title 18, United States Code, Section 915, which makes it a crime to impersonate a diplomat or foreign government official.

4. Under Title 18, United States Code, Section 915, it is a federal crime for any person, with intent to defraud, within the United States, to falsely assume or pretend to be a diplomatic, consular or other official of a foreign government duly accredited as such to the United States, and to act as such, or in such pretended character to demand or obtain or attempt to obtain any money, paper, document, or other thing of value.

## BACKGROUND

5. Anthony GIGNAC was born on July 20, 1970, in the country of Colombia. In 1977, a family in Michigan adopted GIGNAC and his younger brother. Thereafter GIGNAC and his brother moved to the United States.

6. At some point in or around 1987, GIGNAC moved to California. There, he obtained a California identification card in the name of Khalid bin al-Saud, a Saudi Arabian Prince (hereinafter, the "Victim").

7. Thereafter, GIGNAC presented himself as the Victim to obtain unauthorized credit at retail stores. Posing as the Victim, GIGNAC obtained the account number for a member of the royal family at Saks Fifth Avenue and charged approximately $11,300 in merchandise. GIGNAC used the same scheme at Neiman Marcus. There, he racked up $17,691 in charges after he complained about rude treatment, threatened to cancel a fictitious $70,000 order, and faked a call from the Saudi Arabian embassy demanding that the store apologize to Prince al-Saud. Some

weeks later, GIGNAC again used his al-Saud alias to pressure a Citibank employee in the hope that the employee would allow him to withdraw $3.9 million from a fictitious account.[1]

8.     A federal grand jury in the Eastern District of Michigan charged GIGNAC with impersonating a foreign diplomat in violation of Title 18 United States Code, Section 915 and attempted bank fraud, in violation of Title 18 United States Code, Section 1349. GIGNAC pleaded guilty to both counts on October 12, 2006. He completed his supervised release in February of 2017.

## PROBABLE CAUSE

9.     Beginning as early as March 2017, GIGNAC began using the Victim's name in an attempt to purchase a multi-million dollar hotel, located in Miami-Dade County (the "Hotel").

10.    On or about March 24, 2017, an individual, "K.P.," approached several individuals with ownership interest in the Hotel (the "Victim Owners"). K.P. indicated that she represented the Victim, who was interested in purchasing the Hotel. In truth and fact, K.P. did not represent the Victim. Rather, K.P. represented GIGNAC posing as the Victim. To facilitate the deal, GIGNAC, posing as the Victim, offered the Victim Owners $440 million USD to purchase the Hotel. Believing that GIGNAC was royalty and a Saudi Arabian diplomat, with the means to purchase the Hotel, the Victim Owners expressed interest in the deal.

11.    GIGNAC personally called the Victim Owners and held himself out to be the Victim. Furthermore, one of GIGNAC's business associates, "C.W.," provided the Victim Owners with information about GIGNAC's fraudulent identity. C.W. informed the Victim Owners that GIGNAC was in fact the Victim, and further indicated that GIGNAC was a prince and a Saudi Arabian diplomat.

---

[1] See *United States v. Gignac*, 301 Fed. Appx. 471, 472 (6th Cir. 2008)

12. In May 2017, GIGNAC booked a room at the Hotel and presented a Visa Marriott Rewards credit card ending in the numbers 1783 to pay for the expenses he incurred during his visit. The name associated with the Visa credit card was a variation of Victim's name.

13. During his stay at the Hotel, GIGNAC was driving a 2016 Ferrari California (the "Ferrari California"). Photographs of the Ferrari California reveal it was associated with two different license plates (0001 AUD and DHP 0010). Both license plates contain the words "diplomat" as well as insignia associated with official United States diplomatic plates.

14. In August 2017, GIGNAC continued his efforts to purchase the Hotel. On August 11, 2017, GIGNAC invited several Victim Owners to his home located on Fisher Island. GIGNAC took the Victim Owners to his penthouse apartment, which bares the word "SULTAN" on the door buzzer to the front door.

15. While at his residence, GIGNAC displayed an ornate box containing a letter purportedly from the Bank of Dubai, guaranteeing the availability of $600 million USD.

16. GIGNAC then led the Victim Owners to the garage associated with his apartment. GIGNAC displayed several luxury automobiles, including two of his vehicles with purported diplomatic license plates. GIGNAC explained that he had the diplomatic license plates because of his "diplomatic status."

17. Between August 13, 2017, and August 15, 2017, GIGNAC and certain Victim Owners travelled to Aspen, Colorado to further discuss the purchase of the Hotel. One of the Victim Owners flew GIGNAC to Aspen on his private jet. While in Aspen, GIGNAC made representations that he was required to check in the United States State Department "every few hours."

4

18. On August 15, 2017, when GIGNAC returned from Aspen, he drove one of the Victim Owners home in the Ferrari California. The Ferrari California had diplomatic license plates. When the Victim Owner complained that GIGNAC was driving recklessly, GIGNAC responded that nothing would happen if he was pulled over because he had diplomatic immunity.

19. Throughout the course of these events, the Victim Owners became increasingly wary of GIGNAC.

20. As a result, the Hotel's private security group undertook an investigation into GIGNAC and eventually learned GIGNAC was purporting to be Victim, and was attempting to leverage Victim's status as a Saudi Arabian prince to secure large sums of money, as well as various other material benefits.

21. A subsequent investigation by DSS, Office of Foreign Missions (OFM), the division of the United States government charged with issuing and monitoring diplomatic status and diplomatic license plates, verified that both of the diplomatic license plates used by GIGNAC (0001 AUD and DHP 0010) are not official United States government diplomatic license plates and are, in fact, fraudulent.

22. Law enforcement contacted Fisher Island and learned that the island is equipped with license plate readers that digitally scan the license plates of all vehicles entering the island from the Fisher Island Ferry. The license plate information is then cross-referenced to data stored on Fisher Island's community database, and the license plate number and associated resident are logged every time the respective license plates are scanned.

23. From or about June 29, 2017, through October 25, 2017, GIGNAC's Ferrari California with the fraudulent diplomatic license plate "0001 AUD" entered Fisher Island 37 times.

6

## **CONCLUSION**

24. Based upon the above information, I respectfully submit that probable cause exists to believe that between March 24, 2017, and October 25, 2017, Anthony GIGNAC with the intent to defraud within the United States, falsely assumed and pretended to be a diplomat of a foreign government duly accredited as such to the United States and acted as such, to obtain any money, paper, document, or other thing of value, in violation of Title 18, United States Code, Section 915.

FURTHER AFFIANT SAYETH NAUGHT

_____
M. Aizaz Tareen, Special Agent
Diplomatic Security Service

SWORN TO AND SUBSCRIBED BEFORE ME
THIS 17TH DAY OF NOVEMBER, 2017, AT
MIAMI, FLORIDA

_____
Barry L. Garber
United States Magistrate Judge