```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                           MIAMI DIVISION
                     CASE NO. 17-cr-20891-CMA


 UNITED STATES OF AMERICA,         Miami, Florida

         Plaintiff,                May 16, 2018

    vs.                            2:02 p.m. to 2:24 p.m.

 ANTHONY GIGNAC,                   Courtroom 12-2

         Defendant.                (Pages 1 to 10)
_____

                         CHANGE OF PLEA
             BEFORE THE HONORABLE CECILIA M. ALTONAGA,
                   UNITED STATES DISTRICT JUDGE

 APPEARANCES:

 FOR THE GOVERNMENT:      TRINITY JORDAN, ESQ.
                          Assistant United States Attorney
                          99 Northeast 4th Street
                          Miami, FL 33132
                          (305) 961-9001
                          trinity.jordan@usdoj.gov

 FOR THE DEFENDANT:       FRANK J. GAVIRIA, ESQ.
                          14 NE First Avenue, Suite 301
                          Miami, FL 33132-2404
                          (305) 479-4654
                          frank@fjgfirm.com


 REPORTED BY:             STEPHANIE A. McCARN, RPR
                          Official Court Reporter
                          400 North Miami Avenue
                          Twelfth Floor
                          Miami, Florida 33128
                          (305) 523-5518
                          Stephanie_McCarn@flsd.uscourts.gov
```

**I N D E X**

**WITNESSES**

**WITNESSES FOR THE GOVERNMENT:**

--

**WITNESSES FOR THE DEFENDANT:**                                      Page

--

| EXHIBITS IN EVIDENCE | PRE | MARKED | ADMITTED |
|---|---|---|---|
| Government's Exhibit No. | -- | -- | -- |
| Defendant's Exhibit No. | -- | -- | -- |

**MISCELLANEOUS**

```
                                                              Page
Proceedings.........................................    3
Court Reporter's Certificate.......................   10
```

```
 1        (The following proceedings were held at 2:02 p.m.)
 2             THE COURT:  United States and Anthony Gignac.
 3             MR. JORDAN:  Good afternoon, Your Honor.  Trinity
 4   Jordan for the United States.
 5             MR. GAVIRIA:  Frank Gaviria on behalf of Anthony
 6   Gignac.  Good afternoon, Your Honor.
 7             THE COURT:  Mr. Gignac, if you would raise your right
 8   hand.
 9        (The Defendant was sworn.)
10             THE DEFENDANT:  I do.
11             THE COURT:  Mr. Gignac -- if there is anything you
12   need to pass up, please bring it up.  Mr. Gignac, I'm going to
13   be asking you some questions this afternoon in order to accept
14   your plea of guilty.  If at any time you do not understand any
15   of my questions, please let me know, and I will try to clarify
16   the question for you.  Also, if at any time you would like to
17   speak with your attorney and discuss with him off the record,
18   let me know that, and we will pause to give you an opportunity
19   to do so.  And, last, please note that you are under oath.  All
20   of your answers to my questions must be truthful.  If they are
21   not, you may be subjecting yourself to charges of perjury.
22             And do you understand these instructions?
23             THE DEFENDANT:  Yes, ma'am.
24             THE COURT:  Please state your full name.
25             THE DEFENDANT:  Anthony Gignac.
```

```
 1              THE COURT:  How --
 2              MR. GAVIRIA:  Judge, I -- may I bring up an issue
 3    that's come up over the last few days that I wanted to address
 4    the Court prior to Mr. Gignac taking a plea?  I want to make
 5    sure it doesn't come back and later become an issue.
 6              Essentially, there was a -- for a short period of time
 7    I was contacted by Mr. Gignac's brother Daniel Moreno who had a
 8    separate matter in Key West regarding some allegations of
 9    structuring.  He had contacted my office on several occasions
10    asking me to -- to help Mr. Gignac.  Obviously, I was retained
11    by Mr. Moreno and -- as a family member.
12              In addition, he asked me if I could contact the agent
13    who was investigating the structuring issue.  I did contact the
14    agent.  I was retained by Mr. Moreno.  I represented him for a
15    short period of time.  Very quickly thereafter he indicated
16    that he wanted to retain other counsel.  We left on good terms.
17              But in the conversation with Mr. Gignac two days ago,
18    I want to make sure that he will not in the future allege some
19    type of conflict of interest since it is alleged that
20    Mr. Gignac used his brother's passport and that is the
21    underlying basis for the 1028A -- the -- I'm sorry, the
22    identity theft.  So I wanted to make sure that that is not an
23    issue in the future.
24              THE DEFENDANT:  Well, obviously, he being my attorney,
25    if he thought there was an issue, that should have been brought
```

1  up to me way before today.  And, I mean, I can't -- I can't
2  stand on the record if -- if he had been retained by me.  If
3  this was going to be a conflict of interest, then you should
4  have told me that, I don't understand.  Can I speak to my
5  attorney for a moment, please?
6          THE COURT:  Of course.
7          I would ask that we bring out the last defendant.  And
8  I don't know if you all can manage that for me while
9  Mr. Gaviria and his client speak, which I thought they needed
10 to speak, in any event.
11     (A recess was taken from 2:05 p.m. to 2:17 p.m.)
12         THE COURT:  We are back on United States and
13 Anthony Gignac.  What is it that you all would like me to do?
14         MR. JORDAN:  Your Honor, first I'd like to address the
15 Court that the Government doesn't believe there is a conflict
16 here, that Daniel Moreno, the brother, is a -- is a victim in
17 this case in the sense that his passport was used without his
18 knowledge and consent by Mr. Gignac.  However, Daniel Moreno
19 has been involved with, based on our knowledge of listening to
20 all of the jailhouse calls that have been going on, Mr. Moreno
21 was the one who actually coordinated the -- Mr. Gaviria being
22 hired for Anthony Gignac when he came down here, since they
23 live in Michigan and they don't live down here in South
24 Florida.
25         So our understanding is that Mr. Gaviria represented

```
 1   him in a -- in a -- in a state issue that was up that I don't
 2   believe that charges were filed ever.  So we don't believe
 3   there is a conflict of interest at all here.
 4           MR. GAVIRIA:  Judge, and I don't believe I have a
 5   conflict of interest.  I represented Mr. Moreno for a very,
 6   very short period of time.  I just, based on conversations that
 7   I had with Mr. Gignac two days ago, wanted to bring to the
 8   Court's attention in an abundance of caution.
 9           THE COURT:  All right.  So Mr. Gignac is under oath.
10   Do you want to ask him any questions regarding this issue?  You
11   are free to do so now.
12           MR. GAVIRIA:  No, Your Honor.
13           THE DEFENDANT:  Actually, I would like to go on the
14   record, Your Honor, to clarify this issue, because I really
15   have no idea what's going here, to be honest with you, between
16   my attorney and the Government.  My brother should not be
17   anything except a victim in this case.
18           Just to make the record very, very clear, my brother
19   did not hire Mr. Frank.  My attorney Steven Vitale on the phone
20   who knows Frank from our friends or associates is the one that
21   recommended, via the telephone conversations that I've had with
22   my brother.  And, at that time, my brother had recommended
23   another attorney by the name of Frank Quintero.
24           So if the Government would like to listen to the phone
25   calls correctly, it was Steve Vitale who contacted Mr. Frank
```

1  Gaviria.  Mr. Vitale is the one that recommended for me, while
2  I was in New York, to hire Frank.  And Mr. Stephen Vitale is
3  the one that hired Frank, himself.  And my brother had nothing
4  to do with that.  My brother said -- the only thing he's told
5  me is that unfortunately because of my financial situation at
6  this present time and that I am afraid -- that I am -- that my
7  family or friends I was not going to ask them to do any more
8  suffering that they have already done, so that I had to make
9  this relationship with Frank -- with Mr. Gaviria work.
10          I don't think that I should be put on the spot by my
11 Defense Attorney or the United States Government to say what
12 will be or what will not be in the future if I have rights and
13 I don't know those rights have been violated.  At this point I
14 do not think that those rights have been violated, but I
15 shouldn't be put in a position by the United States Government
16 or my attorney who I retained and paid for to represent my best
17 interests and to represent me to be put under the gun and told
18 now that there might be a conflict, and he wants me to go on
19 the record to state that I would never bring that up.  I cannot
20 do that.  I don't know what, if any, of my rights have been
21 violated.  And I haven't understand that.
22          And I am very, very cautious today, Your Honor, in
23 what I am saying because I just want to plea and get this issue
24 over and done with for myself and for the victims.  I want to
25 know how much restitution I owe.  There -- I mean, I just want

1   to get this over for the victims and myself and move on.  But
2   it seems that every time that I've come to this courtroom,
3   there's been something going on between my Defense Attorney and
4   the United States Government.  I have no idea why -- why this
5   is continually going on here.  And it's getting to the point
6   where it needs to be investigated because I have no idea why
7   all this is going on.
8           I want to take a fair plea.  I have a private attorney
9   who I retained to work on my best interests, to work on my best
10  interest to give me the best plea agreement.  I am the one
11  that's sitting here.  I have said I want to plea.  I have done
12  bent over backwards.  Today I have 300 -- 300 messages that
13  have gone between my attorney and myself, and I just want to
14  get this case over and done with.  But I should not be put
15  under the gun by the Government and by Mr. Quintero *[sic]*
16  talking behind -- between each other, going outside, discussing
17  if he has done something illegal or wrong.  It's -- the
18  Government should not be involved in that.
19          THE COURT:  Well, one thing is -- first of all, it was
20  Mr. Gaviria, not Mr. Quintero.  But, second of all, I don't
21  like being put in this position either.  This matter was set
22  for a change of plea, and I am not going to take a change of
23  plea right now because we have run out of time, and there are
24  all these issues that I don't have time to address with you.
25  This was to be a change of plea colloquy, 15, 20 minutes long,

```
 1   not a whole other issue about whether Defense counsel suffers
 2   from a conflict of interest and what information Mr. Gaviria
 3   shared with his client regarding that perceived conflict of
 4   interest so as not to surprise Mr. Gignac here in open the
 5   court and be asked to answer questions about a matter he has
 6   not discussed properly.
 7            So I will let you all contact my courtroom deputy and
 8   let her know when you are all ready to actually have a change
 9   of plea hearing free of extraneous issues.
10            THE DEFENDANT:  Your Honor, I would just like to say
11   one thing, if I may, for two seconds.  I just want to go on the
12   record just so that I'm protected.  I have worked constantly
13   with the United States Government and with my attorney in
14   trying to get a plea done.  I do not think it's fair, or I
15   don't want my rights violated, and I don't want to be
16   threatened that my -- this plea agreement that I've fully
17   entered into is going to be taken back, that I am going to be
18   charged with more charges and that the United States -- that I
19   don't have a right and that my rights are being taken away when
20   I am not doing anything at all.
21            This is just unbelievable that today I come here to
22   take a plea, and this is all going on behind my back with my
23   Defense Attorney who I retained and paid to represent by best
24   interest.
25            THE COURT:  Thank you.  You all have a good day.
```

1    MR. JORDAN: Your Honor, there is one other thing, Your Honor, a housekeeping issue. There was a protective order that you had signed in this case for the discovery. Mr. Gignac has been sharing that information with cellmates, that discovery. He shared it with another attorney that's not on this case that came to visit him at the jail. And so we are asking the Court to ask if we can have all of that discovery back from Mr. Gignac that he has in his cell because of his protective order.

    THE COURT: This was set for a change of plea. If there is another matter you need to address, please raise it properly.

    (The proceedings adjourned at 2:24 p.m.)


**C E R T I F I C A T E**

   I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

_07/20/18__                    _____
   DATE                         STEPHANIE A. McCARN, RPR
                                 Official United States Court Reporter
                                 400 North Miami Avenue, Twelfth Floor
                                 Miami, Florida 33128
                                 (305) 523-5518