UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 17-CR-20891-CMA(s)(s)

UNITED STATES OF AMERICA

vs.

ANTHONY GIGNAC,
   a/k/a "Khaled Al-Saud,"
   a/k/a "Khalid Al-Saud,"
   a/k/a "Khalid Bin Al-Saud,"
   a/k/a "Khalid Bin Sultan Al-Saud,"
   a/k/a "Sultan Bin Khalid Al Saud,"

      **Defendant.**
_____/

## FACTUAL PROFFER

The United States and Anthony Gignac, a/k/a "Khaled Al-Saud," a/k/a "Khalid Al-Saud," a/k/a "Khalid Bin Al-Saud," a/k/a "Khalid Bin Sultan Al-Saud," a/k/a "Sultan Bin Khalid Al Saud," (the "Defendant") agree that the factual basis for the Defendant's guilt is set out in this Proffer. The parties agree that the facts included herein are true, and that they show beyond a reasonable doubt that the Defendant is guilty of the crimes charged in Counts 1, 6, 12, and 16 of the Superseding Indictment.

### Overview

From as early as May 2015, through roughly November 19, 2017, in Miami-Dade County, the United Kingdom, and elsewhere, the Defendant and his co-conspirators did knowingly and willfully, that is, with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate

commerce, certain writings, signs, signals, pictures and sounds. The purpose of the conspiracy was for the Defendant and his co-conspirators (including a co-conspirator with the initials C.W.), to unjustly enrich themselves by making false and fraudulent representations that the Defendant was a member of the Saudi royal family with significant backing and access to lucrative business ventures, for the purpose of acquiring favorable consideration in business deals, and to obtain investments from victims, property, money, material goods, and other things of value. Based on those false and fraudulent representations, among others, victims deposited money, by means of interstate and international wires, into bank accounts controlled by the Defendant and his co-conspirators, in order to invest in the false and fictitious business opportunities touted by the Defendant and his co-conspirators, or to provide loans related to the same opportunities. Also based on those false and fraudulent representations, the Defendant and his co-conspirators demanded and received gifts, things of value, and favors from their victims. The Defendant and his co-conspirators received, retained and used the victims' investments, loans, gifts, and things of value for their own use and personal gain. For the purpose of executing and in furtherance of the fraud, the Defendant and his co-conspirators sent wire communications via interstate and foreign commerce. Also, during and in relation to the fraud, the Defendant and his co-conspirators used the means of identification of several individuals without their permission.

In addition, beginning in March 2017, and continuing through October 25, 2017, in Miami-Dade County, the Defendant did knowingly, and with intent to defraud within the United States, falsely assume and pretend himself to be a diplomat, consular and other official of a foreign government duly accredited as such to the United States, and acted as such, and in such pretended character, he demanded, obtained, and attempted to obtain money, paper, documents, and other things of value.

## Specific Facts

Sometime in 2015 – the exact date unknown – co-conspirator C.W. and the Defendant made contact with each other via LinkedIn. The Defendant and C.W. decided to form an investment company in the U.S. to further their business aspirations, and – eventually – fraud. On June 23, 2015, Marden Williamson International ("MWI") was formed by C.W. in Delaware.

In October 2015, C.W. traveled to London where he met several British investors, including Individual A. After meeting C.W., Individual A spoke to the "Prince" over the phone, and sought to become involved in arranging investment opportunities for the Prince in the U.K. and around the world. The Defendant and C.W. told Individual A that the Defendant was in fact a Saudi Arabian prince. Eventually, Individual A would help MWI, C.W., and the Defendant obtain investors for MWI.

Between 2015 and 2017, though primarily in 2017 after the Defendant moved to Miami, the Defendant and C.W. tricked more than 20 different victims into investing with the Defendant and MWI. Generally speaking, C.W. or Individual A located potential victims. Then, C.W. reached out to the victim investors and told them that he worked on behalf of a Saudi-Arabian Prince (the Defendant), with access to lucrative business deals. The Defendant and C.W. made various misrepresentations to the victim investors concerning the Defendant's status as a Saudi-Arabian Prince, and the fake business deals supposedly available to the victims. The early victims were told that MWI, through the "Prince," had access to favorable options in a jet-fuel trading platform in the Middle East. Later, the investment opportunities varied. Generally, the victims were told that their investment or loan would go to MWI, but would be earmarked for the specific investment that they had been pitched on. The Defendant and C.W. supported their misrepresentations: (1) by showing the victims forged letters purporting to show the Defendant's status as a prince, or his access to lucrative business deals; (2) by putting the victims in touch with

3

the Defendant over the phone; and (3) by arranging face-to-face meetings between the victims and the Defendant. The Defendant's email traffic[1] showed numerous emails among and between the Defendant, his co-conspirators, and various businesses. In those emails, C.W. and the Defendant referred to the Defendant as Prince, Sultan, or HRH ("His Royal Highness"). Based on those misrepresentations, the victims sent money for the supposed investments, which the Defendant and C.W. kept for their own personal use.

Throughout the entirety of this fraud scheme, the Defendant presented himself as a Saudi Arabian prince. He purchased and/or used diplomatic license plates for his cars, a Diplomatic Security Service badge for his body guard, traditional garb associated with the Saudi Royal family, luxury goods consistent with the lavish life of a Saudi Royal, and business cards (in both English and Arabic) referring to himself as Prince, HRH, and/or Sultan. He ran an Instagram account depicting himself as a prince, including pictures of his lavish lifestyle, and pictures of Saudi Royal family members with captions such as "uncle." The Defendant referred to himself as a prince when meeting with investors, in emails, and over the phone. He traveled with security, and demanded that certain royal protocol (i.e., gift giving) be followed in business meetings. The Defendant was not, in fact, a Saudi prince.

The Alaska-Jersey project was another false investment opportunity pitched by the Defendant and his co-conspirators. For that project, the Defendant and his co-conspirators falsely and fraudulently claimed that the Defendant had a 10% stake in pre-IPO Saudi Aramco shares. Saudi Aramco was the state-owned oil company of Saudi Arabia. It was worth billions of dollars, and – at the time – Saudi Arabia was considering taking the company public. The Defendant and

---

[1] At various times, the Defendant used the following email addresses (among others): KhalidMAlsaud@gmail.com, SultanAzizSaud@gmail.com, mahasaabriyadh@gmail.com, kbas43@yahoo.com, and Khalidalsaud07@yahoo.com. All emails sent from those accounts were either sent by the Defendant, or at his direction.

4

his co-conspirators represented that, if the victims invested in the project, they would receive a portion of his shares in the company prior to the time at which the general public could invest in the company. As part of that endeavor, the Defendant and his co-conspirators falsified a number of supposed Saudi documents supporting the deal, including: (1) a fake legal opinion from a Saudi law firm; (2) a fraudulent Deed of Guarantee for Alaska Jersey Limited; and (3) a fake letter from a Saudi law firm attesting to the Defendant's supposed 10% stake in Saudi Aramco. These documents contained forged signatures of high-ranking Saudi figures. The Defendant did not have the permission of those individuals to use their names or signatures. Based on the above misrepresentations, the Defendant and his co-conspirators tricked several victims into investing with the Defendant and MWI.

Through the course of the fraudulent scheme, the Defendant and his co-conspirators tricked over 20 victims into giving him and MWI approximately $8,131,102.06. The funds were not put into Saudi Aramco or any other legitimate investment. The money was used to pay for the Defendant and his co-conspirator's lavish lifestyle, including the purchase or lease of Ferraris, Rolls-Royces, expensive jewelry, designer clothing, travel, and a two-bedroom property on Fisher Island. Related to the foregoing scheme, the Defendant repeatedly sent wire communications in interstate and foreign commerce. This included emails and texts messages that were sent for the purpose of executing and in furtherance of his scheme to defraud. Those emails and texts include, but are not limited to, the following:

| # | APPROX. DATE | WIRE COMMUNICATION |
|---|---|---|
| 1 | October 4, 2017 | WhatsApp message from the Defendant to K.P. sending a picture of a Deed of Guarantee purportedly signed by M.S.A.M., S.A.G., and A.Z.Y., causing wire transmission from the SDFL to the United Kingdom |

The above communication was sent from the Defendant in the Southern District of Florida, and traveled in interstate and/or foreign commerce.

On October 29, 2017, the Defendant left Miami to travel internationally. He used a passport, the means of identification of a real person, belonging to an individual with the initials D.M., without D.M.'s permission. The Defendant has never been issued a passport in his name, or in any of his Saudi aliases. Flight records show that C.W. and the Defendant (using the name D.M.) traveled from Miami to Chicago on October 29, 2017, then Chicago to Hong Kong, Hong Kong to Dubai, and Dubai to London. C.W. and the Defendant flew from London to New York City (JFK Airport) on November 19, 2017. The Defendant, travelling as D.M., was arrested upon his arrival at JFK.[2]

This statement does not reflect a full recitation of relevant facts or available evidence in this case, and is intended only to serve as the factual basis for the defendant's guilty plea. The defendant knowingly and voluntarily agrees that this Factual Proffer, the Defendant's Plea Agreement, and any statements made by the Defendant at his plea colloquy, may be admitted in the case-in-chief at trial in a criminal prosecution in the Southern District of Florida. The

---

[2] The facts contained in this proffer can be proved by, among other things, the following evidence: (1) airline records; (2) items recovered from the Defendant during his arrest at JFK (including phones, iPads, and jewelry); (3) bank records; (4) credit card records; (5) phone records; (6) victim interviews; (7) MWI business documents; (8) evidence gathered from the Defendant's Fisher Island home; (9) evidence gathered from C.W.'s home; (10) evidence gathered from the Defendant's safety deposit box at Chase Bank; (11) evidence gathered from the Defendant's cars, and the cars of his security guards; (12) evidence gathered from the Defendant's storage units; (13) documentary evidence from various Casinos; (14) the Defendant's emails; (15) C.W.'s emails; (16) eBay account history; (17) the Defendant's Instagram account; (18) photos of the Defendant using diplomatic license plates; (19) photos of the Defendant's bodyguard using a DSS badge; (20) the false documents created by the Defendant; (21) the deal books for the false investment opportunities offered by the Defendant; (22) documents from Ferrari; (23) documents from Fisher Island; (24) business cards and letterhead referring to the Defendant as a Prince; (25) the Defendant's computer; (26) the Defendant's text messages; and (27) other evidence. The Defendant acknowledges that he has received and reviewed this evidence in discovery, and that it does in fact prove his guilt in this matter.

defendant knowingly and voluntarily waives any protections that he may have under F.R.E. 410 and F.R.C.P. 11(f), if the defendant elects to proceed to trial after signing this Factual Proffer.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date: 3/26/19          By: _____
                            FREDERIC C. SHADLEY
                            ASSISTANT UNITED STATES ATTORNEY

Date: 3/26/19          By: _____
                            AYANA HARRIS
                            ASSISTANT FEDERAL PUBLIC DEFENDER

Date: 3/26/19          By: _____
                            ANTHONY GIGNAC
                            DEFENDANT