UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 17-20891-CR-ALTONAGA(s)

UNITED STATES OF AMERICA,

vs.

ANTHONY GIGNAC,

       Defendant.
_____/

**DEFENDANT'S MEMORANDUM IN SUPPORT OF SENTENCING**

    The Defendant, Anthony Gignac, through undersigned counsel, respectfully submits this memorandum in support of sentencing.

    For the reasons that follow, the totality of the facts and circumstances of this case support the imposition of a sentence that is "sufficient but not greater than necessary to comply with the purposes" of 18 U.S.C. § 3553(a)(2). This "parsimony principle" requires that the sentence imposed balance "just punishment for the offense," "adequate deterrence," and "protect[ion of] the public" with "medical care or other correctional treatment in the most effective manner." *Id*. § 3553(a)(2)(A)-(D).

    I.    **The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant pursuant to § 3553(a)(1)**

    To be clear, the trauma that Mr. Gignac suffered during the first years of his life that not only failed to be treated but was instead exacerbated by ensuing events is no excuse for his offense conduct in this case. His upbringing is discussed for the sole

purpose of providing context for why the lack of trauma-informed treatment—or any treatment whatsoever—was a critical mistake in his childhood that had led to adverse consequences that have reverberated in the following decades.

Evidence-based research is unequivocal that trauma that occurs in childhood can have devastating and long-lasting results:

> Young children are at the highest risk for exposure to trauma and are most vulnerable to its adverse effects.
>
> . . .
>
> Childhood trauma is strongly linked to mental and physical health problems over the lifespan. It negatively impacts brain development, cognitive development, learning, social-emotional development, the ability to develop secure attachments to others, and physical health; it is also associated with a shortened lifespan. A considerable body of research demonstrates that children suffer the most severe, long-lasting, and harmful effects when trauma exposure begins early in life, takes multiple forms, is severe and pervasive, and involves harm by a parent or other primary caregiver—often referred to as *complex trauma.*
>
> . . .
>
> Children exposed to several different forms of trauma are more likely to exhibit PTSD (e.g., anxiety, depression, anger, aggression, dissociation) than children with chronic exposure to a single type of trauma.

Jessica Dym Bartlett & Kathryn Steber, CHILD TRENDS, *How to Implement Trauma-Informed Care to Build Resilience to Childhood Trauma,* May 9, 2019, *available at* https://www.childtrends.org/publications/how-to-implement-trauma-informed-care-to-build-resilience-to-childhood-trauma (last accessed May 24, 2019) (hereinafter "Implementation of Trauma-Informed Care to Build Resilience After Childhood Trauma").

At the age of 5, Anthony Gignac's biological parents abandoned him and his 3-year-old brother. They subsequently lived on the streets of Bogota, Columbia, until they were taken to an orphanage and then adopted by an American couple from Michigan. ███████████████████████████████████████ ███████████████████████████████ Eventually, his adoptive parents divorced, which resulted in his separation from his younger brother—his sole remaining family member.

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████

According to Implementation of Trauma-Informed Care to Build Resilience After Childhood Trauma, discussed on the preceding page, included among the list of common types of childhood trauma are abuse and neglect, family violence, community violence, loss of or separation from a parent or other loved one, forced displacement, and extreme poverty. Mr. Gignac was exposed to all of these risk factors by age 5 – contributing to the complex trauma he was exposed to. ████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████

> The context in which children live, learn, and grow shapes both their immediate and long-term well-being. Accordingly, children who experience trauma are more likely to exhibit resilience when their environments are responsive to their specific needs. Families, schools, community-based programs and services, and the individuals caring for children can increase the chances of resilience

following childhood trauma when they become aware of the impact of childhood trauma, provide a sense of safety and predictability, protect children from further adversity, and offer pathways for their recovery. In other words, children benefit when these entities provide them with trauma-informed care (TIC).

Implementation of Trauma-Informed Care to Build Resilience After Childhood Trauma at 1.

After conducting an extensive interview, collateral research, and clinical testing, Dr. Michael DiTomasso, Ph.D., P.A., concluded ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. A (Evaluation by Dr. DiTomasso) at 13. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## II. Balancing the sentencing goals pursuant to § 3553(a)(2)

In this case, the challenge for the Court in imposing a sentence that is sufficient, but not greater than necessary to achieve the sentencing objectives contained in 18

U.S.C. § 3553(a), is balancing the neurological impact the extreme trauma that Mr. Gignac suffered as a child with the other § 3553(a) factors.

██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
████████████████████████████████

██████████████████████████████████████████ Mr. Gignac will need to rely upon the social support he has, as demonstrated by the letters filed in support of sentencing, ████████████████████████████████████████

Second, the United States Sentencing Commission has noted the inverse relationship between age at release and risk of recidivism:

> Older offenders were substantially less likely than younger offenders to recidivate following release. Over an eight-year follow-up period, 13.4 percent of offenders age 65 or older at the time of release were rearrested compared to 67.6 percent of offenders younger than age 21 at the time of release. The pattern was consistent across age groupings, and recidivism measured by rearrest, reconviction, and reincarceration declined as age increased.

> ...

> Age and criminal history exerted a strong influence on recidivism. For offenders in Criminal History Category I, the rearrest rate ranged from 53.0 percent for offenders younger than age 30 at the time of release to 11.3 percent for offenders age 60 or older. For offenders in Criminal History Category VI, the rearrest rate ranged from 89.7 percent for offenders younger than age 30 at the time of release to 37.7 percent for offenders age 60 or older.

. . .

> Age exerted a strong influence on recidivism across all sentence length categories. Older offenders were less likely to recidivate after release than younger offenders who had served similar sentences, regardless of the length of sentence imposed.

United States Sentencing Commission, The Effects of Aging on Recidivism Among Federal Offenders at 3 (December 2017), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (last accessed May 24, 2019).

Mr. Gignac is almost 49 years old, and, if the Court imposed a guidelines sentence, would be at least in his mid to late 60's at the time of release, and thus poses the lowest risk for recidivism according to the Sentencing Commission's own data—even despite his criminal history category.

## CONCLUSION

Mr. Gignac is remorseful for his actions, and recognizes that he must be punished. However consideration of his early childhood trauma, balanced against the § 3553(a) sentencing factors, will hopefully aid the Court in fashioning a sentence that will provide both general and specific deterrence as well as allow him a chance to one day reenter society ██████████████████████

WHEREFORE, for the reasons stated herein and any additional reasons adduced at the time of sentencing, Mr. Gignac respectfully requests that this Court consider this memorandum, Dr. DiTomasso's psychological evaluation, and the § 3553(a) factors cited herein to fashion an appropriate sentence in this cause.

Respectfully submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

BY:   s/Ayana N. Harris
Ayana N. Harris
Assistant Federal Public Defender
Florida Bar No. 537624
150 West Flagler Street, Suite 1700
Miami, Florida 33130-1556
Tel: 305-530-7000/Fax: 305-536-4559

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **May 29, 2019**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Ayana Harris
Ayana Harris